**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **D.W.**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, <br><br> Defendant. | Civil Action No. 18-cv-1824 (CRC) (DAR) |

**ORDER**

Upon careful consideration of the record in this case and the Magistrate Judge's Report and Recommendation filed July 15, 2019, and hearing no objections from the Defendant, the Court hereby ADOPTS the Report of the Magistrate Judge and ACCEPTS her Recommendation. Accordingly, it is hereby

**ORDERED** that [12] Plaintiffs' Motion for Summary Judgment be **GRANTED**. It is further

**ORDERED** that [14] Defendant's Motion for Summary Judgment be **DENIED**.

**SO ORDERED.**

Date:    July 30, 2019

_____
CHRISTOPHER R. COOPER
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Woodson et al., | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-01824 |
| | CRC/DAR |
| District of Columbia, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Arika Woodson commenced this action pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. §§ 1400-1482, and the Special Education Student Rights Act of 2014 ("Student Rights Act") D.C. Code § 38-2571.02 – 38-2573.01, seeking judicial review of a final decision of an Independent Hearing Officer ("IHO") of the District of Columbia Office of the State Superintendent of Education with respect to D.W., her minor child, a student who is eligible for special education and related services. *See* Complaint (ECF No. 1) ¶ 1.

In her complaint, Plaintiff claims that the Hearing Officer Decision ("HOD") was erroneous as a matter of law, and that the Hearing Officer erred by placing a condition on the Plaintiff's right to have a designee observe D.W. by finding that the Defendant, the District of Columbia Public Schools ("DCPS"), could require the designee to certify by signing a non-disclosure agreement that he would not testify about the observation in a due process hearing involving D.W. *See* Complaint ¶¶ 52-61. Plaintiff requests that the court vacate the May 18,

2018 HOD and order the Defendant to allow the Plaintiff's designee to observe D.W. without any restrictions outside those explicitly listed in the D.C. Code. *Id.* at ¶ 62.

## I.  BACKGROUND[1]

### A.  *Factual Background*

D.W. is eligible for services as a student who has been diagnosed with Angelman's Syndrome, Agenesis of the Corpus Callosum, asthma, allergies, microencephaly, cerebral palsy (mild), and global delays across developmental levels. *See* Hearing Officer's Determination ("HOD") (ECF No. 10-1) at 7. During the 2016-2017 school year, D.W. attended Francis-Stevens Elementary School, and was in a self-contained classroom with a dedicated aide. *Id.* At the end of that school year, DCPS informed the Plaintiff that it would be placing D.W. in a different day school without the dedicated aide. *Id.* The Plaintiff objected and filed a due process complaint on August 14, 2017. *Id.*

The due process hearing resulted in a determination by IHO Coles Ruff that DCPS had denied D.W. a free and appropriate public education ("FAPE") when it proposed to place D.W. in a more restrictive educational placement. *Id.* at 7-8. In an interim order, IHO Ruff denied the Plaintiff's request for her education expert, Dr. Paul Livelli to observe the student at Beers Elementary because he believed Dr. Livelli had a potential financial interest in the litigation. *Id.*

---

[1] The facts pertinent to this recitation of the background are summarized from the Hearing Officer Determination which is a part of the Administrative Record. Plaintiff, in her opposition to Defendant's cross motion contends that the Defendant failed to oppose the Plaintiff's statement of material facts, which includes documents that are in addition to the Administrative Record, and asked that her Statement of Facts be admitted. *See* Plaintiff's Memorandum in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Memo in Opposition") (ECF No. 15) at 1, n.1. This contention is incorrect; LCvR 7(h)(2) states that in cases that are based solely on the Administrative Record, "motions for summary judgment and oppositions thereto shall include a statement of facts with references to the administrative record." LCvR 7(h)(2). *See also* LCvR cmt. to LCvR 7(h) ("this provision recognizes that in cases where review is based on an administrative record the Court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record."); *Kelsey v. District of Columbia*, No. 13-1956 BAH/DAR, 2015 WL 13658063 at *2 n.4 (D.D.C. Jan. 13, 2015) ("review of cross-motions for summary judgment will be based solely on the administrative record").

at 8. As relief, IHO Ruff ordered DCPS to conduct new evaluations, and to convene a meeting to review and revise D.W.'s Individualized Education Plan ("IEP") to determine a placement for the student. *Id.*

Prior to this meeting, Plaintiff again sought to have Dr. Livelli observe D.W. at Francis-Stevens Elementary, but on December 5, 2017, DCPS informed the petitioner that it would not allow the observation because IHO Ruff had denied the Plaintiff's request for Dr. Livelli to observe the student in prior litigation. *Id.* at 9. At the time of this request, there was no current litigation ongoing between the parties. *Id.* On January 22, 2018, DCPS convened a meeting to review the new evaluations, which Dr. Livelli attended. *Id.*[2]

On February 2, 2018, Plaintiff filed an administrative due process complaint against DCPS, alleging that DCPS violated the Student Rights Act by denying the Plaintiff's designee the chance to observe D.W., and that this denied D.W. a FAPE. *See* Due Process Complaint Notice (ECF No. 10-1) at 28. DCPS moved on February 22, 2018 to dismiss the complaint, alleging that the action was barred by collateral estoppel and/or res judicata because the proposed observation was the same kind of observation that was barred by IHO Ruff's HOD. *See* HOD at 3-4. IHO Michael S. Lazan stated that the issue to be determined was, "[d]id DCPS deny the Petitioner's expert an opportunity to observe the Student's classroom in violation of the Special Education Student Rights Act, located at D.C. Code Sect. 38-2571.03(5)(A)?" *See id.* at 7.

---

[2] The new evaluations included three observations by a DCPS psychologist, interviews with D.W.'s special education teacher, speech and language pathologist occupational therapist, paraprofessional classroom aide, and dedicated aide, as well as an Assistive Technology Evaluation. *See* HOD (ECF 10-1) at 9. The Plaintiff maintains that her participation in the January IEP meeting was limited because her designee was not allowed to observe D.W. in the classroom, while DCPS had employees who had conducted evaluations. *See* Plaintiff's Motion for Summary Judgment (ECF 12) at 6.

**B.** *Summary of the Hearing Officer Determination*

Following the due process hearing, IHO Lazan found on May 18, 2018 that the Plaintiff was entitled to have her designee observe D.W. at D.W.'s school, but before the observation, DCPS could require the designee to sign a document under oath affirming that he would "not use the information gathered during the observation 1) in any subsequent special education litigation against DCPS; and 2) in an effort to retain additional clients so that they can engage in special education litigation against DCPS." HOD at 13.

In his discussion of the case, IHO Lazan relied on his interpretation of two sections of the Student Right's Act, set out in D.C. Code § 38-2571.03(5)(A) and (E), which provide that:

> Upon request, an LEA shall provide timely access, either together or separately, to the following for observing a child's current or proposed special education program: (i) The parent of a child with a disability; or (ii) a designee appointed by the parent of a child with a disability who has professional expertise in the area of special education being observed or is necessary to facilitate an observation for a parent with a disability or to provide language translation assistance to a parent; provided that the designee is neither representing the parent's child in litigation related to the provision of free and appropriate public education for that child nor has a financial interest in the outcome of such litigation.

D.C. Code § 38-2571.03(5)(A), and that:

> An observer shall not disclose nor use any information obtained during the course of an observation obtained during the course of an observation for the purpose of seeking or engaging clients in litigation against the District or the LEA.

*Id.* at (E).

IHO Lazan determined that the reference to "such litigation" in § 38-2571.03(5)(A) referred to current litigation, and that because there was no current litigation, the Plaintiff's designee could conduct an observation. *See* HOD at 12. Further, IHO Lazan determined that the § 38-2571.03(5)(E) placed a condition on observers who intend to use the information in future

litigation. *Id.* IHO Lazan then determined that because Dr. Livelli did not understand what this clause meant and had indicated in testimony that he may use the information in future litigation, DCPS could require Dr. Livelli to sign a document precluding him from using the information obtained in the observation in any subsequent litigation against DCPS involving this student or any other student. *Id.*

## II.    CONTENTIONS OF THE PARTIES

### A.  *Contentions of the Plaintiff in her Motion for Summary Judgment*

Plaintiff alleges that the IHO erred in interpreting the Student Rights Act by preventing the Plaintiff's designee from observing D.W. in his current placement and testifying about what he observed in any subsequent due process proceeding involving D.W. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Motion for Summary Judgment") (ECF No. 12) at 1. In her Motion for Summary Judgment, the Plaintiff claims that the HOD is contrary to the plain language of the Student Rights Act, and that D.C. Code § 38-2571.03(5)(E) ( "An observer shall not disclose nor use any information obtained during the course of an observation for the purpose of seeking or engaging clients in litigation against the District or the LEA") does not refer to observers who have already been engaged by a Plaintiff. *See Id.* at 12. In support of this conclusion, the Plaintiff cited the legislative history of the statute, which she alleges gives no clear indication anything other than the plain meaning of the statute was intended. *Id.* Plaintiff further contends that the purpose of the statute was to "ensure that 'parents have the tools they need to stay *informed, engaged, and empowered throughout the special education process*.'" *Id.* (quoting D.C. Council, Report on Bill 20-723 at 1 (July 10, 2014)).

The Plaintiff further contended that the IHO's interpretation of the Student Rights Act would lead to unjust or absurd consequences, because while schools would have multiple experts who could observe the student and offer testimony at a due process hearing, the parents would only be able to bring in an expert if the expert had not observed the student in the program. *Id.* at 18. As evidence of this claim, the Plaintiff alleges that the IHO who issued the HOD in question later revisited his interpretation of the Student Rights Act in a subsequent case and determined that "the words 'seeking' or 'engaging' in the statute are better read as a reference to an observer looking for, or working with, 'new' clients." *Id.* at 31.

Finally, the Plaintiff alleges that the HOD would violate the principles of IDEA, as it would limit the Plaintiff's participation in the IEP process, as well as her ability to evaluate the Student's IEP. *Id.* at 21. Plaintiff contends that for the foregoing reasons, they are entitled to summary judgment. *Id.* at 1.

**B.** ***Contentions of the Defendant in Opposition and Cross-Motion for Summary Judgment***

Defendant believes DCPS is entitled to summary judgment. *See* District of Columbia's Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment ("Def.'s Cross Motion") (ECF No. 13) at 1. The Defendant contends that the Court lacks the jurisdiction to hear the challenge because the HOD awarded the Plaintiff the relief that they sought, and the IDEA does not create a right of action to challenge a favorable HOD. *Id.* at 8. Defendant further contends that the complaint is moot, because the Plaintiff's received the "precise legal relief that they were seeking." *Id.* at 14.

Next, Defendant suggests that IHO correctly applied D.C. Code §38-2571.03(5)(E), and that the statutory language is unambiguous. *Id.* at 15. The Defendant maintains that the plain

intent of the provision is to bar designees that are representing the parent's child in litigation or that have a financial interest in the outcome of the litigation. *Id.* at 17. Defendant also maintains that the intent of the statute was to prevent needless litigation against the District and the LEA. *Id.* at 18. DCPS further argues that the legislative intent behind the Student Rights Act was meant to create a series of rights for parents, but that this does not support the notion that these rights would not be empowering if parents did not have "unrestricted" use of their experts to testify. *Id.*at 21.

The Defendant further argued that IHO Lazan's later HOD did not affect the outcome of the current case, because the parents in that case were not granted any rights than the Plaintiff is granted in the instant case. Defendant stated that "[n]othing in the HOD in the instant case stands for the proposition that Plaintiffs' expert could not use the result of his observations to testify in relation to a due process hearing for D.W., if he complied with the HOD's terms and signed the non-disclosure agreement with the school." *Id.* at 22.

Finally, the Defendant argues that Plaintiff's designee was not prevented from observing D.W. in his class setting and was free to do so and then educate the Plaintiff based on his observation. The designee just had to comply with the provisions of the Student Rights Act, which involved signing a non-disclosure agreement as the HOD required. *Id.* at 23.

### C. *Contentions of the Plaintiff in her Memorandum in Opposition to the Cross-Motion*

In her Memorandum in Opposition to the Defendant's Cross-Motion for Summary Judgment, the Plaintiff disputes the Defendant's interpretation of the plain language of the statute and the legislative history discussing it. *See* Plaintiff's Memorandum in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Memo in Opposition") (ECF No. 15) at 4-5. In

addition, the Plaintiff contends that she was not granted the relief she requested, because she asked for "meaningful school observations," and the HOD limited the Plaintiff's ability to use the observation if she disagreed with the school later. *Id.* at 12-13. The Plaintiff contends that the HOD has resulted in and will continue to result in prejudice when it comes to special education decisions being made for her child. *Id.* at 15.

Further, the Plaintiff claims the case is not moot because there is an ongoing controversy and she has not obtained the relief she seeks. *Id.* at 16. The Plaintiff further notes that even if the current case was moot, the case should be heard because it involves an interpretation of the Student Rights Act that could occur repeatedly but may evade review. *Id.* at 17. She argues that the time frame of a HOD challenge may be too short to litigate before any subsequent IEP meeting that the observation would be needed for. *Id.* at 17-18. The Plaintiff contends that she is likely to be in a similar situation again and will continue to need access to independent observations of her child, and that without relief, the Defendant will continue to limit her access to observations. *Id.* at 19. Finally, the Plaintiff contends that other families seeking observations of their children will be placed in a similar situation as her and may be "forced to give up the ability to get an observation or to litigate their request to obtain a meaningful school observation." *Id.* at 20.

## III.    STATUTORY FRAMEWORK

The purpose of IDEA is to "ensure that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *M.G. v. District of Columbia*, 246 F.Supp.3d 1,7 (D.D.C. 2017) (citing 20 U.S.C. § 1400(d)(1)(A)). This requires state and local education agencies to

create eligible students Individualized Education Plans in consultation with the student's parents. *See* 20 U.S.C. § 1414(d)(1)(B). Parents must have an opportunity to participate in the IEP process, and "procedural inadequacies that "seriously infringe upon the parents' opportunity to participate in the IEP formulation process… clearly result in the denial of a FAPE."" *Cooper v. District of Columbia*, 77 F.Supp.3d 32, 37 (D.D.C. 2014) (quoting *A.I. 3ex rel. Iapalucci v. District of Columbia*, 402 F.Supp.2d 152, 164 (D.D.C. 2005)) (alteration in original). To ensure these requirements are followed, IDEA established procedural safeguards that allows parents to seek review of IEP decisions they disagree with. *See Middleton v. District of Columbia*, 312 F.Supp.3d 113, 122 (D.D.C. 2018). Section 1415(f)(1)(A) provides "the parents or the local education agency involved in such a complain shall have an opportunity for an impartial due process hearing…" Following a due process hearing, § 1415 (i)(2)(A) provides that,

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C.A. § 1415 (i)(2)(A).

Further, IDEA allows states to create additional procedural and substantive protections if they are consistent with IDEA. *Middleton*, 312 F.Supp.3d at 122. If a state creates a higher standard, "an individual may bring an action under the federal statute seeking to enforce the state standard." *Id.* (quoting *Gill v. Columbia 93 Sch. Dist.*,217 F.3d 1027, 1035).  In 2014, the District of Columbia passed the Student Rights Act. *Id.* The Act "provides district parents with additional procedural safeguards to help make sure parents have the tools they need to stay informed, engaged, and empowered throughout the special education process." *See* D.C. Council

Comm. Rep. on B 20-723 (D.C. 2014) at 1. Recognizing that "parents who do not have a specific background in the subject area… often cannot adequately evaluate whether their child's instruction is sufficient [and that] parents are concerned that an LEA may limit such access to the point that the observation is unable to provide meaningful input into their child's educational progress,"[3] the Student Rights Act expanded on a parent's "right to observe" under the IDEA, and states:

> Upon request, an LEA shall provide timely access, either together or separately, to the following for observing a child's current or proposed special education program: (i) The parent of a child with a disability; or (ii) a designee appointed by the parent of a child with a disability who has professional expertise in the area of special education being observed or is necessary to facilitate an observation for a parent with a disability or to provide language translation assistance to a parent; provided that the designee is neither representing the parent's child in litigation related to the provision of free and appropriate public education for that child nor has a financial interest in the outcome of such litigation.

D.C. Code § 38-2571.03(5)(A). Restrictions on this right to observe are detailed in § 38-2571.03(5)(D):

> The LEA shall not impose any conditions or restrictions on such observations except those necessary to:
> (i)    Ensure the safety of the children in the program;
> (ii)   Protect other children in the program from disclosure by an observer of confidential and personally identifiable information in the event such information is obtained in the course of an observation by a parent or a designee; or
> (iii)  Avoid any potential disruption arising from multiple observations in a classroom simultaneously.

D.C. Code § 38-2571.03(5)(D).

Finally, D.C. Code § 38-2571.03(5)(E) provides that "[a]n observer shall not disclose nor use any information obtained during the course of an observation obtained during the course of

---

[3] D.C. Council Comm. Rep. on B. 20-723 (D.C. 2014) at 3.

an observation for the purpose of seeking or engaging clients in litigation against the District or the LEA." D.C. Code § 38-2571.03(5)(E).

## IV.    APPLICABLE STANDARD OF REVIEW

In civil actions seeking review of an HOD under the IDEA, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *Q.C-C., et al. v. District of Columbia*, 164 F.Supp.3d 35, 43-44 (D.D.C. 2016) (quoting *D.R. ex rel. Robinson v. District of Columbia*, 637 F.Supp.2d 11,16 (D.D.C. 2009). In cases that appeal the IHO's interpretation of a statute, the issue is a pure question of law that is reviewed de novo. *See, e.g.*, *Reid ex. Rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005).

## V.    DISCUSSION

### A.  *Plaintiff's claim is not moot.*

As a preliminary issue, the undersigned finds that the Court may hear the case and that the Plaintiff's claim is not moot. The Defendant contends that the instant case is moot because (1) the Plaintiffs have received the relief they requested and cannot sue to enforce a favorable HOD, and (2) therefore no case or controversy exists between the parties. *See* Def.'s Cross Motion at 14. These issues are intertwined, and a determination of whether the Plaintiffs received the relief they requested will also determine whether there is a case or controversy between the parties. "A case is considered "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome… [a] case… is 'not moot so long as any single claim for relief remains viable, whether that claim was the primary or secondary relief sought." *Morris v. District of Columbia*, 38 F.Supp.3d 57, 66 (D.D.C. 2014) (citation omitted). This court

has previously determined that "[w]here a school district has provided a parent with some forms of relief, but not with all of the specific relief requested by her, her claims are not moot." *Suggs v. District of Columbia*, 679 F.Supp.2d 43, 54 (D.D.C. 2010).

The instant case will be determined based on whether this Court finds that the May 2018 HOD provided the Plaintiff with a chance to meaningfully observe her child under the Student Rights Act. The central issue to this inquiry is whether the Act allows an LEA to require the signing of a non-disclosure agreement forbidding observers from testifying about their observations in due process hearings. The answer will determine whether the May 2018 HOD provided for a "meaningful observation" under the Act and will determine whether the Plaintiff has received the relief asked for. The Defendant's contention that the Plaintiff has received the precise relief asked for in her due process complaint is therefore speculative and cannot render the present case moot.

However, even if the case were moot, the "capable of repetition yet evading review" doctrine would allow the Court to hear the claim. This doctrine applies in "[e]xceptional circumstances… when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subject to the same action again." *N.W. v. District of Columbia*, 253 F.Supp.3d 5, 14 (D.D.C. 2017) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). In the instant case, the request for observation at the core of the Plaintiff's claim was denied in December of 2017, in preparation for a January IEP meeting. *See* HOD at 9. The Plaintiff did not receive a determination until May of 2018, and her subsequent appeals process has taken her well into 2019. Given the prolonged time between even her initial claim and the HOD issued in May, the Plaintiff is correct to point out that, "requiring a parent to begin a due process proceeding each

time she requests, and is denied, an observation, would ensure that no parent would have access to information obtained from a school observation in time for the meeting which he or she requested." Pl.'s Memo in Opposition at 18-19.

Turning to the second prong, there is a "reasonable expectation" that the Plaintiff's claim will repeat if no determination is made today. The observation requested by the plaintiff in the instant case is the second observation she has asked for. *See* HOD at 8. In addition, her son is eight, and has annual numerous IEP meetings in his future. It is likely that she may request observations in the future to prepare for these IEP meetings, and the Plaintiff has shown a willingness to bring due process claims against DCPS. As such, it would be improper to forego a determination of the case today on the grounds of mootness, and a final determination may head off numerous challenges in the future.

**B.** ***The HOD's requirement that the Plaintiff's expert signs a non-disclosure agreement goes against the plain language of the statute and prevents her fully participating in her son's IEP.***

The undersigned finds that the Student Rights Act's plain language and legislative history support a finding that the HOD placed an unlawful burden on the Plaintiff by requiring her expert to sign a non-disclosure agreement prior to observing her child, and that this prevented her from fully participating in his IEP meeting. The issue of whether a school may prevent a parent's designee from observing a student unless they sign a non-disclosure agreement has been discussed to a limited extent in *Middleton v. District of Columbia*, but whether an LEA may prevent an observer from participating in future litigation appears to be a matter of first impression in this district. To resolve the issue, the undersigned first applies the tools of statutory construction to the provisions of the Student Rights Act. "The traditional tools [of statutory

construction] include examination of the statute's text, legislative history, and structure, as well as its purpose." *Petit v. U.S. Dept. of Educ.*, 675 F.3d 769 (D.C. Cir. 2012).

The pertinent language is as follows:

> 5(A) Upon request, an LEA shall provide timely access, either together or separately, to the following for observing a child's current to proposed special education program:
>> (i) the parent of a child with a disability; or
>
> (ii) a designee appointed by the parent of a child with a disability who has professional expertise in the area of special education being observed or is necessary to facilitate an observation for a parent with a disability or to provide language translation assistance to a parent; provided, that the designee is neither representing the parent's child in litigation related to the provision of a free and appropriate public education for that child nor has a financial interest in the outcome of such litigation.
>
> (C) A parent, or the parent's designee, shall be allowed to view the child's instruction in the setting where it ordinarily occurs or the setting where the child's instruction will occur if the child attends the proposed program.
>
> (D) the LEA *shall not impose any conditions or restrictions on such observations except those necessary to*:
>
> (i) Ensure the safety of the children in the program;
>
> (ii) Protect other children in the program from disclosure by an observer of confidential and personally identifiable information in the event such information is obtained in the course of an observation by a parent or a designee; or
>
> (iii) Avoid any potential disruption arising from multiple observations occurring in a classroom simultaneously.
>
> (E) An observer shall not disclose nor use any information obtained during the course of an observation for the purpose of seeking or engaging clients in litigation against the District or the LEA.

D.C. Code § 38-2571.03. (emphasis added).

Turning first to subsection (A), the Act allows for observations by parents or by designees with expertise in special education "provided… the designee is neither representing the parent's child in litigation… nor has a financial interest in the outcome of such litigation." D.C. Code § 38-2571.03 (A). The HOD correctly concluded that this references existing litigation, and not future litigation that has not occurred. AR at 12. This does not conflict with

this Court's conclusion in *Middleton* that "the right-to-observe provision does not apply to a designee that is representing the parent's child in litigation related to the provision of FAPE for that child or to a designee who has a financial interest in the outcome of such litigation." *Middleton v. District of Columbia*, 312 F.Supp.3d 113, 147 (D.D.C. 2018). The facts of Middleton support the HOD's conclusion. In that case, an educational advocate who had been retained for at least a year before the due process complaint was commenced was kept from conducting a school observation. *See Id.* at 122-127. The Court found that by keeping the educational advocate from observing, the defendant had denied the plaintiff's participation rights and denied the student a FAPE. *Id.* at 147. The Court did not seem to consider that the educational advocate was "representing the parent in litigation" simply by being retained and may have implicitly taken the same stance as the IHO in the instant case.

In subsection (D), The Act states what restrictions an LEA may provide and limits these restrictions to three areas: student safety, preventing the disclosure of confidential information, and avoiding disruptions. The act explicitly states that schools "shall not impose any conditions or restrictions" except those necessary to fulfill these goals. D.C. Code § 38-2571.03 (D). In the present case, there is no connection, nor does DCPS claim there is, between these goals and the restriction placed on the Plaintiff's expert.

Because there is no nexus between the restrictions on the Plaintiff's observer and subsection (D), the HOD relied on subsection (E), which has not been interpreted by this Court. Turning to the plain language of the statute, subsection (E) governs what a school observer may do with information that has been "obtained"[4] during the observation: they may not use this

---

[4] Merriam Webster defines "obtain" as "to gain or attain usually by planned action or effort." *Obtain*, Merriam-Webster's Dictionary (Online ed. 2019). The use of past tense in subsection (E) implies that the subsection governs conduct after the information has already been obtained.

information "for the purpose of *seeking* or *engaging* clients." D.C. Code § 38-2571.03 (E) (emphasis added). This language implies that IHO Lazan's later interpretation of the statute, that the information obtained on a previous observation cannot be used in efforts to obtain new clients, was correct. *See* Attachment 2 to Pl.'s Motion for Summary Judgment at 31. Indeed, it would be impossible to use information obtained during an observation to seek or engage a client the observer had already been retained by.

This interpretation is bolstered by the legislative intent and the purpose of the statute. The Act "provides District parents with additional procedural safeguards to help make sure parents have the tools they need to stay informed, engaged, and empowered throughout the special education process." D.C. Council Comm. Rep. on B 20-723 (D.C. 2014) at 1. The Council report stated that observations are a "critical tool" for parents, and the ability to designate an observer was a "significant issue for special education… as parents who do not have a specific background in the subject area… often cannot adequately evaluate whether their child's instruction is sufficient." *Id.* at 3. At no point in the Report's discussion of "parental access to schools" does the Council discuss preventing the observer from being involved in litigation for the student they have observed.

In addition, the legislative report indicates that the Act was meant to address the unequal distribution of information between an LEA – who "is typically the party who has access to all of the compliance information" – and parents who "[must] procure more extensive, and expensive, legal services, including expert witnesses, in an effort to match the resources of the LEA." *Id.* at 4-5. While these quotes are addressing changes the Act made to the "Burden of Proof," under IDEA, this discussion further shows the importance the Council put on ensuring parents were on an equal footing with the school. Allowing only the school, and not the parents, to bring experts

into due process hearings would go directly against this goal and would create additional expenses by forcing parents to retain a separate witness for litigation purposes.

The Defendant's claim that the intent of the statute was to "prevent needless litigation against the District and the LEA,"[5] is too narrow a reading of subsection (E), which merely prevents observers from engaging in new clients while observing the student for which they began the observation. The Defendant relies on the language of the statute itself, and while the statute does foreclose some litigation, it does not imply that all litigation against the LEA is needless or that the observer would not be able to participate in any litigation. While the report does discuss preventing "frivolous" lawsuits, the report discusses sanctions on the attorneys and capping witness fees as deterrence, not restricting the observer's abilities to participate in future due process hearings. D.C. Council Comm. Rep. on B 20-723 (D.C. 2014) at 6-7. Considering both the plain language and the legislative intent, the undersigned finds that subsection (E) prevents an observer from seeking or engaging new clients while observing the student they have been retained to observe, but it does not prevent them from testifying about their observation during due process hearings for the child they observed.

### C.  *The Defendant's interpretation of the statute would lead to absurd results.*

Finally, "[w]hen possible, statutes should be interpreted to avoid "untenable distinctions," unreasonable results," or "unjust or absurd outcomes."" *Kaseman v. District of Columbia*, 444 F.3d 637, 642 (D.C. Cir. 2006). The undersigned finds that the defendant's rule would result in unreasonable results given the legislative intent of the Student Rights Act. The statute was meant to empower the parents and reduce the information gap between parents and schools, and the Defendant's reading would further neither of these goals.

---

[5] Def.'s Cross-Motion for Summary Judgment at 18.

Under the defendant's interpretation, a parent may have a designee observe the student and then participate in the IEP, but if that parent disagrees with the IEP and begins a due process claim against the school, the designee would not be able to testify at that hearing.[6] Far from being a "meaningful observation," this observation would only help to the extent it would inform the parent at the initial IEP meeting. If the parent disagreed with the school after the IEP meeting, she would need to instigate a due process hearing, where the school would be able to bring in the employees who had developed the IEP.  Under the Defendant's reading, the parent would either be forbidden from bringing in her own expert who had evaluated the adequacy of the student's education or could bring them in if they did not testify about the observation they conducted. This would create an additional burden on a parent rather than put them on the same playing field as the LEA.  This result is inconsistent with the plain language and legislative intent of the statute, and is therefore not consistent with the Act.

## VI.     CONCLUSION

With respect to the IDEA claim first raised by the Plaintiff in her memorandum in support of her motion for summary judgment, the undersigned concludes, based on the full extent of the findings articulated herein, that the HOD impermissibly allowed the Defendant to place a condition on the Plaintiff's observer that forbid him from testifying on D.W.'s behalf at due process hearings.

---

[6] *See* Def.'s Cross Motion at 26. This reading of the defendant's arguments is seemingly contradicted by certain statements of the defendant: "[n]othing in the HOD in the instant case stands for the proposition that Plaintiff's expert could not use the result of his observations to testify in relation to a due process hearing for D.W., if he complied with the HOD's terms and signed the non-disclosure agreement with the school." *Id.* at 26-27. This observation is at odds with the HOD's Conclusions of Law, which stated in part, "DCPS may require Witness A to sign a document under oath that he will not use the information obtained through the observation: 1) *in any subsequent special education litigation against DCPS, involving this Student or any other student;* and 2) in an effort to retain additional clients so that they can engage in special education litigation against DCPS." AR at 12 (emphasis added).

Thus, for all the foregoing reasons, it is, this 15th day of July, 2019,

**RECOMMENDED** that the Plaintiff's Motion for Summary Judgment (ECF No. 12) be

**GRANTED** and the Defendant's Cross Motion for Summary Judgment (ECF No. 14) be

**DENIED.**

_____
DEBORAH A. ROBINSON
United States Magistrate Judge

**Within fourteen days, either party may file written objections to this report and recommendation. The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each objection. In the absence of timely objections, further review of issues addressed may be deemed waived.**